UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE RAUL PLASENCIA,

                Petitioner,

vs.                        Case No.  2:10-cv-255-FtM-29DNF

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS and FLORIDA ATTORNEY
GENERAL,

                Respondents.

_____

## OPINION AND ORDER

### I. Status

Jose Raul Plasencia (hereinafter "Petitioner") initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on April 26, 2010. The Petition challenges Petitioner's 2002 conviction, after a jury trial, for second degree murder for which Petitioner was sentenced to thirty (30) year in prison. Petition at 1. Petitioner's sentence and conviction were *per curiam* affirmed on direct appeal on June 23, 2004. Plasencia v. State, 902 So. 2d 805 (Fla. 2d DCA 2004); Exh. 5. The Petition identifies the following four grounds for relief:

(1) Petitioner was denied his U.S. Constitutional Right to a Fair Trial When the Trial Court Improperly Allowed the State to Suppress Favorable Evidence; and

(2) Petitioner was denied his U.S. Constitutional Rights When the Trial Court Imposed An Upward Departure Sentence From the Guidelines Sentence to the Statutory Maximum;

(3) Petitioner was denied his Sixth Amendment Right to Effective Assistance of Trial Counsel When Trial Counsel Failed to Call Witnesses in His Defense; and,

(4) Petitioner was denied his Sixth Amendment Right to Effective Assistance of Trial Counsel When Trial Counsel Failed to Object to Sentencing.

See generally Petition.

Respondent filed a Response to the Petition (Doc. #12, Response), and attached exhibits in support (Exhs. 1-30). Petitioner filed a Reply to the Response (Doc. #16, Reply) and submitted exhibits in support (Exhs. A-B).

## II.  Applicable § 2254 Law

### A.  Deferential Review Required By AEDPA

Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."  Id. (internal quotations and citations omitted).  See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits." Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).  Thus, a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.  Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court." Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."  Thaler v. Haynes, 559 U.S. 43, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70,

74(2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412
(2000))(recognizing "[c]learly established federal law" consists of
the governing legal principles, rather than the *dicta*, set forth in
the decisions of the United States Supreme Court at the time the
state court issues its decision). "A state court decision involves
an unreasonable application of federal law when it identifies the
correct legal rule from Supreme Court case law but unreasonably
applies that rule to the facts of the petitioner's case, or when it
unreasonably extends, or unreasonably declines to extend, a legal
principle from Supreme Court case law to a new context."
<u>Ponticelli v. Sec'y, Fla. Dep't of Corr.</u>, 690 F.3d 1271, 1291 (11th
Cir. 2012)(internal quotations and citations omitted). The
"unreasonable application" inquiry requires the Court to conduct
the two-step analysis set forth in <u>Harrington v. Richter</u>, 131 S.
Ct. 770. First, the Court determines what arguments or theories
support the state court decision; and second, the Court must
determine whether "fairminded jurists could disagree that those
arguments or theories are inconsistent with the holding in a prior"
Supreme Court decision. <u>Id.</u> (citations omitted). Whether a court
errs in determining facts "is even more deferential than under a
clearly erroneous standard of review." <u>Stephens v. Hall</u>, 407 F.3d
1195, 1201 (11th Cir. 2005). The Court presumes the findings of
fact to be correct, and petitioner bears the burden of rebutting
the presumption by clear and convincing evidence. 28 U.S.C. §
2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.  Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.  Id.

## B.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is

reliable." Strickland, 466 U.S. at 688; see also Bobby Van Hook, 558 U.S. ___, 130 S. Ct. 13, 16 (2009); Cullen v. Pinholster, 131 S. Ct. at 1403 (2011).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." Bobby Van Hook, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case,

could have done something more or something different.  So,
omissions are inevitable.  But, the issue is not what is possible
or 'what is prudent or appropriate, but only what is
constitutionally compelled.'" Chandler v. United States, 218 F.3d
1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776,
794 (1987)).

### III.  Findings of Fact and Conclusions of Law

The Court has carefully reviewed the record and, for the
reasons more fully set forth below, concludes no evidentiary
proceedings are required in this Court. Schriro v. Landrigan, 550
U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not
proffer any evidence that would require an evidentiary hearing,
Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the
Court finds that the pertinent facts of the case are fully
developed in the record before the Court. Schriro, 127 S. Ct. at
1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert.
denied, 541 U.S. 1034 (2004).  See also San Martin v. McNeil, 633
F.3d 1257, 1271 (11th Cir. 2011)(stating "[a]n evidentiary hearing
may be necessary where the material facts are in dispute, but a
petitioner is not entitled to an evidentiary hearing when his
claims are merely conclusory allegations unsupported by
specifics.")(internal quotations and citations omitted).

### Factual Background

The Court incorporates, in pertinent part, the "Statement of
the Case" from Respondent's Response:

The facts of this case are found in the Initial Brief filed in the Petitioner's direct appeal (Exhibit 002), which are summarized as follows:

> The State's evidence showed the appellant and the victim were in a relationship and the appellant was staying at the victim's apartment occasionally. (R. 478).   The evidence established the appellant had made the victim angry by borrowing her car and not returning it when promised.   Additionally, the victim was angry with the appellant because she was unable to locate him after he failed to return the car. (R. 470-71).   The victim's best friend testified the appellant was "very jealous." (R. 477, 479).   The State produced evidence the victim planned to break up with the appellant based on this incident as she did not trust him anymore. (R. 478).   The victim's parents were staying with her on the weekend of the offense and left on Sunday morning. (R. 441).   The parents did not hear from her again, even though the victim's mother's birthday was March 4th and the victim always called on the birthday. (R. 442-443).
>
> The State produced two of the victim's friends who had attempted to make contact with her after the offense. The victim's best friend, Ms. Tellefsen, established the state of the relationship for the jury, including the fact the victim intended to break up with the appellant. (R. 478).   Additionally, the testimony of Ms. Tellefsen was in direct conflict with the appellant's version of events as she told the jury the victim did not allow the appellant to drive her car nor had the appellant moved into the victim's apartment. (R. 470-71, 478).
>
> The State produced another of the victim's friends, Denise Womer, who testified she was good friends with the victim and met the appellant through her. (R. 539-41). Ms. Womer would go out with the victim, the appellant and others as part of her circle of friends. (R. 541).   Ms. Womer testified she received a phone call from "Tito," a mutual friend of both her and the appellant, who asked if she had seen the appellant. (R. 544).   They went out Monday night looking for the appellant. (R. 544).   As part of the search, Ms. Womer went by the victim's apartment and did not see the victim's car, did not see the appellant's car, and did not see any note on the victim's apartment door. (R. 544-45).   Ms. Womer again searched for the appellant the next day, but did not remember where she looked. (R. 547).   Ms. Womer testified

she went back to the victim's apartment on Wednesday,
three days after the offense, and she noticed a note on
the front door of the apartment. (R. 547). Ms. Womer
read the note and assumed that everything was okay. (R.
547). Based on the note Ms. Womer and Ms. Tellefsen,
assumed the appellant and the victim had gone on
vacation, but they continued to telephone and go over to
the victim's apartment to check for the victim. (R. 548).
After over two weeks, Ms. Womer asked Ms. Tellefsen to
call the victim's parents and as a result of the contact,
Ms. Womer requested the sheriff's department do a welfare
check on the victim. (R. 549). As a result of the check,
the victim's body was discovered. (R. 556-57).

The State showed the victim suffered two black eyes and
a split lip prior to being strangled to death. (R.
988-90). The autopsy revealed the victim had intercourse
prior to death and there was evidence of blunt trauma to
her anus. (R. 993-95). The autopsy also revealed
cartilage high up in the victim's neck had been broken,
"not connected totally," during her attack which showed
the perpetrator used extreme force as the victim's
cartilage was pliable and soft and therefore difficult to
break. (R. 993). The evidence showed the victim
struggled with the appellant during the strangulation and
was alive when the damage was done to her neck. (R. 991).
The State produced DNA and fingerprint evidence to show
the appellant was present at the scene at the time of the
offense. (R. 904, 956-57, 958, 970). Further, the
State's evidence showed the victim was strangled past the
point of unconsciousness, indicating the appellant
continued to apply pressure to the victim's neck longer
than necessary to stop the victim from attacking him, as
she would have unable to resist at that point, and the
victim died as a result of the strangulation. (R.
1051-53). The victim was five foot, four inches tall and
weighed one hundred and twenty-three pounds at the time
of death. (R. 986).

Petitioner was found guilty by the jury of the lesser
included offense of Second Degree Murder, a first degree
felony. Petitioner was sentenced to thirty (30) years in
prison for this offense. The statutory maximum sentence
in Florida for a first degree felony is thirty (30) years
in prison.

Response at 2-5.

**Ground One**

Petitioner alleges a <u>Brady</u>[1] claim and states that the prosecution suppressed favorable evidence in violation of his Fifth and Fourteenth Amendment rights.   Petition at 5.   In support, Petitioner states that Agent Jones collected evidence from the guestroom, namely "a bedsheet that had a clump of hair and drops of blood on it," that were not sent to the lab for analysis and was suppressed from the defense.   <u>Id.</u>   Petitioner argues that this evidence supported his theory of "self defense" because he had claimed that the victim "cut him with a knife" and "pulled his hair."   <u>Id.</u> at 6.

Respondent contends that this claim is procedurally defaulted because Petitioner did not raise this claim on direct appeal. Response at 25.   Respondent points out that Petitioner did raise this <u>Brady</u> claim in his Rule 3.850 motion, and notes that the postconviction court summarily denied the claim as refuted by the record.   <u>Id.</u>

In Reply, Petitioner acknowledges that he did not raise the claim on direct appeal because "the operable facts of this claim were not disclosed until" Petitioner was preparing his Rule 3.850 motion.   Reply at 9.   Further, Petitioner argues that a claim of fundamental error may be raised on a Rule 3.850 motion.

It is undisputed that Petitioner did not raise a <u>Brady</u> claim on direct appeal.   <u>See</u> <u>generally</u> Exh. 2.   Nonetheless, Petitioner

---

[1]<u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

is not foreclosed from raising this claim in a Rule 3.850 motion.
Smith v. State, 931 So. 2d 790, 805 (Fla. 2006)(noting petitioner's
allegation that he was denied due process by the State's failure to
disclose pertinent facts should have been litigated on direct
appeal or brought in his 3.850 motion).  Consequently, the Court
will consider Ground One exhausted to the extent raised in
Petitioner's Rule 3.850 motion.

Petitioner advanced the following claim as ground three in his
Rule 3.850 motion:

> Petitioner was deprived of his Fourteenth Amendment right
> to due process of law by the State's failure to disclose
> evidence which was both favorable to the defense and
> material to Petitioner's guilt or punishment.

Exh. 25 at 048.  In support, Petitioner claimed that Lieutenant
Walker discovered a "hunk of hair" and "three drops of blood" on a
bed sheet in the guest bedroom, which were never submitted for
analysis.  Id.  Petitioner contends that the hair and blood
belonged to him and "would have proven that a physical
confrontation, in which he was wounded as a result, had occurred."
Id. at 049.  Petitioner's defense was that "the victim initiated
the confrontation by kneeing him in the groin, hitting him with an
object and, pulling his hair before and after attacking him with a
knife.  Id.  Petitioner cited to Brady in support of his claim.
After response from the State, Id. at 113, the postconviction
summarily denied the claim.  Id. at 1639-40.  In disposing of this
claim, the state court found:

Finally, citing <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Defendant alleges . . . that his due process rights were violated "by the prosecution's failure to disclose evidence which was both favorable to the Defendant and material to his guilt or punishment." He argues that hair and blood in the victim's guest bedroom "were never listed as being taken into evidence or submitted for laboratory analysis."

To assert a successful <u>Brady</u> violation claim, a defendant must demonstrate that (a) the evidence at issue was favorable to the accused because it was either exculpatory or impeaching; (b) the State suppressed the evidence either willfully or inadvertently; and (c) the defendant was prejudiced by the suppression of the evidence. <u>Polk v. State</u>, 906 So. 2d 1212 (Fla. 1st DCA 2005). However, a <u>Brady</u> claim cannot stand if a defendant knew of the evidence allegedly withheld or had possession of it, simply because the evidence cannot then be found to have been withheld from the defendant." <u>Maharaj v. State</u>, 778 So. 2d 944, 954 (Fla. 2000).

Defendant alleges in his sworn Motion that prior to trial he "attempted to recover this presumably missing evidence by requesting defense counsel investigate how [it] could have been overlooked by crime scene investigators." Furthermore, Lieutenant Walker stated during his deposition that he saw hair and blood on the bed in the victim's guest bedroom. <u>See</u> attached copy of Lieutenant Walker's deposition, pages 6-7. Because the record conclusively reflects that both defense counsel and Defendant had knowledge of the evidence, the Court finds that there was no <u>Brady</u> violation in the instant case and [this ground] is denied.

<u>Id.</u> at 1639-40. The appellate court *per curiam* affirmed the postconviction court's denial of this claim. Exh. 29.

Petitioner cannot show that the State courts' rejection of this claim was an unreasonable application of clearly established federal law or an unreasonable determination of the facts in the instant case. Here, the record establishes that both Petitioner and Petitioner's trial counsel knew of the allegedly withheld

information.  Petitioner admits that he was aware of the existence of this evidence.  Petition at 7 (stating "Petitioner's knowledge of the existence of this evidence is based upon the nature of the physical injuries received in the attack and the likelihood the hair clumps became dislodged as he placed the crisper drawers under the bed.  The same is true for the blood spots.").  Further, trial counsel deposed  Lieutenant Walker who testified that he located this evidence in the guest bedroom at the victim's home prior to locating her body in the refrigerator and determining that there was a crime.  See Walker Deposition at 6-7 (testifying that he saw "clumps of hair, a hunk of hair" and "three drops of blood on the bed" in the "extra bedroom."), and 8-9 (testifying that as the officers were leaving the apartment he pulled the towel hanging on the refrigerator and "saw the lady" inside and the officers "went into a crime scene mode" and started a "contamination list of all the people that came into the scene from that point forward" and turned over everything to the detectives).  Consequently, Petitioner's Brady claim is meritless.  See Parker v. Allen, 565 F.3d 1258, 1277 (11th Cir. 2009)(stating "there is no suppression if the defendant knew of the information or had equal access to obtaining it." (citations omitted)); Maharaj v. Sec'y of the Dep't of Corr., 432 F.3d 1292, 1312-13 (11th Cir. 2005) (rejecting petitioner's Brady claim even where the State failed to turn over the actual report at issue when defense counsel had knowledge of the relevant facts, had equal access to the evidence, had an

opportunity to depose the witness to discover material, and had an opportunity to cross-examine the witness and did cross-examine the witness on the key issues).   Consequently, the Court denies Petitioner relief on Ground One.

**Ground Two**

In Ground Two, Petitioner contends that the State court violated his Fifth, Sixth and Fourteenth Amendment rights when it imposed an upward departure sentence contrary to Apprendi[2] and Blakely.[3]  Petition at 9.  In support, Petitioner claims that the jury returned a verdict to the lesser included offense of Second Degree Murder, which had a "maximum sentence" of "260 months."  Id. Petitioner claims that the trial court departed from the guidelines and imposed a 360 month sentence based upon the trial court's finding that the offense was heinous, atrocious and cruel.  Id.

Respondent argues that Ground Two is procedurally barred because Petitioner did not raise this issue on direct appeal, and did not raise the federal dimension of this claim in his postconviction motion but only raised it in terms of state law. Response at 30.  In reply, Petitioner points out that, after he filed a motion for rehearing, the appellate court ordered the State to reply to Petitioner's Blakely argument.   Reply at 11. Petitioner directs the Court to the appellate court's order attached to his Reply.  Exhibit B.

_____

[2]Apprendi v. New Jersey, 530 U.S. 466 (2000).

[3]Blakely v. Washington, 542 U.S. 296 (2004).

As "Point IV" on direct appeal, Petitioner claimed the trial court erred "in imposing a departure sentence . . . when the cruelty and trauma in the crime was within the range of the cruelty and trauma inherent in second degree murder." Exh. 2 at 39. On June 23, 2004, the appellate court *per curiam* affirmed Petitioner's conviction and sentence on direct appeal. Exh. 5.

On June 24, 2004, the United States Supreme Court issued its opinion in Blakely v. Washington, 542 U.S. 296 (2004). Thereafter, on June 30, 2004, Petitioner filed a motion for rehearing citing to Blakely and Apprendi. Exh. at 6. On September 9, 2004, the appellate court, citing to Blakely, directed the State to file a supplemental response to the motion for rehearing. Exh. 7. The State argued that the Blakely and Apprendi issues were not properly raised in a motion for rehearing and should be raised in Rule 3.800(a) motion. Id. at 2-3. In the alternative, the State addressed the merits of Petitioner's Blakely claim. Id. at 3-7. Petitioner filed a reply. Exh. 9. On February 18, 2005, the appellate court denied Petitioner's motion for rehearing without opinion. Exh. 10.

The procedural default rule bars a federal court from reaching the merits of a claim on collateral review when the habeas petitioner failed to follow a state's procedural rules while presenting his federal claim in state court. Wainwright v. Sykes, 433 U.S. 72, 82 (1977). "Federal review of a petitioner's claim is barred by the procedural default doctrine if the last state court

to review the claim states clearly and expressly that its judgment rests on a procedural bar . . . and that bar provides an adequate and independent state ground for denying relief." Johnson v. Singletary, 938 F.2d 1166, 1173 (11th Cir. 1991)(en banc) (citations omitted).

In light of the silent denial, it is not clear whether the appellate court denied Petitioner's motion for a rehearing on the basis that his Blakely claim was improperly brought in a motion for rehearing or on the merits. Nonetheless, the Court need not determine whether the Ground Two is procedurally barred because the Court finds Petitioner is not entitled relief on his Blakely and Apprendi claims. See Valle v. Sec'y, Dep't of Corr., 459 F.3d 1206, 1213 (11th Cir. 2006)(stating "[h]ere, it is unnecessary to address the issue of the procedural bar, because even assuming the claim is preserved, Valle is not entitled to habeas relief."). See also Loggins v. Thomas, 654 F.3d 1204, 1215 (11th Cir. 2011).

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that a defendant has a right to a jury trial on any fact, other than a prior conviction, that increases the "statutory maximum" sentence. In Blakely v. Washington, 542 U.S. 296, 303-05 (2004), the Court held that the "statutory maximum," within the meaning of Apprendi, was the top of a state guideline range. Binding precedent holds that Blakely, like Apprendi, is not retroactively applicable to cases on collateral review. See Schriro v. Summerlin, 542 U.S. 348 (2004)(holding the jury-right

_Apprendi_ principle not retroactively applicable on collateral review); _In re Dean_, 375 F.3d 1287 (11th Cir. 2004)(holding _Blakely_ not retroactively applicable to cases on collateral review); _United States v. Duncan_, 381 F.3d 1070 (11th Cir. 2004)(finding the defendant's failure to raise _Blakely_ at trial or sentencing fatal to the defendant's attempt to raise the issue on direct appeal); _United States v. Curtis_, 380 F.3d 1308 (11th Cir. 2004)(holding that the defendant waived _Blakely_ by not raising the issue in the initial brief on appeal, even though the issue was raised prior to the decision on the merits); _United States v. Levy_, 379 F.3d 1241 (11th Cir. 2004)(finding petitioner waived _Blakely_ by not raising the issue until a petition for rehearing on appeal). Consequently, even if Petitioner can establish that the trial court improperly departed from the guidelines, he cannot establish that his federal constitutional rights were clearly established by rulings of the United States Supreme Court.

In the alternative, Petitioner's claims that his thirty year sentence violates _Blakely_ or _Apprendi_ is unavailing. Contrary to Petitioner's assertion, Petitioner was _not_ sentenced beyond the statutory maximum. Pursuant to Fla. Stat. 782.04(2), second degree murder, which is classified as a first degree felony, carries a maximum penalty of life in prison. Consequently, Petitioner is denied relief on Ground Two.

**Ground Three**

Petitioner contends that trial counsel was ineffective in failing to call witnesses.  Petition at 10.  In support, Petitioner claims that trial counsel should have called Lieutenant Walker to testify to the "physical evidence of Petitioner's injuries . . . ."  Id. at 11.  More specifically, Petitioner points to the blood drops and hair clumps observed by Lieutenant Walker in the guest bedroom that Petitioner argues supported his claim of self-defense.  Id. Petitioner raised this same claim as ground 1 in his Rule 3.850 motion.  Id. at 6.  The postconviction granted Petitioner an evidentiary hearing on this ground.  Exh. 25 at 1632, ¶5.  In denying Petitioner relief, the postconviction court cited to the Strickland standard and concluded as follows:

> 2.    In ground 1 of his Motion, Defendant alleged that his attorneys were ineffective for failing to call Lieutenant Wyatt Walker to testify at trial, even though Walker was under subpoena to testify. Lieutenant Walker stated during his deposition that while searching the victim's residence, he saw a clump of hair and three drops of blood on a bed sheet in the guest bedroom. Defendant claimed in his Motion that the hair and blood belonged to him and supported his theory that the victim was the aggressor and he acted in self-defense.  Because the hair and blood were not collected as evidence, Defendant argued that the only way to present them at trial was through the testimony of Lieutenant Walker.

> 3.    Attorney Robert Harris testified at the evidentiary hearing that he was one of the attorneys who represented Defendant at trial. He stated that although the defense subpoenaed Lieutenant Walker for trial, he was not called to testify.  Mr. Harris explained that the defense subpoenaed a number of potential witnesses in an abundance of caution, but that did not mean the defense was planning on calling each subpoenaed witness.  Mr. Harris stated that Detective James Jones, who

photographed the hair and blood at issue in ground 1, thought the hair was cat hair belonging to the victim's cat. Accordingly, Mr. Harris felt that Detective Jones would be able to cast significant doubt on any defense claim that the hair and blood belonged to Defendant, especially since Lieutenant Walker had no proof otherwise. Also, Defendant never told him that the victim had pulled his hair, struck him or otherwise done anything to him while in the guest room or that anything had ever happened in the guest bedroom. Mr. Harris testified that the defense was trying to enhance everything that would create credibility for their self-defense theory. Therefore, Mr. Harris thought the evidence was meaningless and unhelpful. He did not think it was a good trial tactic to rely on the evidence because he did not want the jury to feel that the defense was "just throwing things at a wall and seeing what stuck."

4. Attorney Neil McLoughlin testified at the evidentiary hearing that he was the other attorney who represented Defendant at trial. Mr. McLoughlin stated that Defendant never indicated that he had fought with the victim in the guest bedroom. Therefore, Lieutenant Walker was not called to testify at trial because his testimony would have contradicted Defendant's testimony and he did not want the jury to think Defendant was "fudging something."

5. Notably, Lieutenant Walker testified at the evidentiary hearing that he observed blood and hair on the bed in the guest bedroom. He thought the hair was cat hair and he remembered that a cat had been found inside the apartment. Detective Jones also testified at the evidentiary hearing that he was the lead detective at the crime scene and he observed what he thought was cat feces and cat hair on the bed in the guest bedroom. He did not think that the bed had blood on it.

6. Based on the evidence presented at the evidentiary hearing, the Court finds that Defendant's attorneys' decision not to call Lieutenant Walker to testify at trial was a reasonable trial strategy as Walker's testimony would have conflicted with Defendant's testimony. Accordingly, the Court finds that the attorneys' decision did not constitute ineffective assistance of counsel. In addition, based on the testimonies of Lieutenant Walker and Detective Jones, who

both believed that the hair was cat hair, the Court finds that there is no reasonable probability that, but for the defense attorneys' inaction, the result of the proceedings would have been different. Therefore, ground 1 is denied.

Id. at 3327-3329.  Petitioner appealed the denial of his Rule 3.850 motion, including the denial of this ground in his amended brief. Exh. 26 at 32.  The appellate court *per curiam* affirmed.  Plasencia v. State, 32 So. 3d 631 (Fla 2d DCA 2010); Exh. 029.  The Court finds Ground Three is exhausted and will address the Ground on the merits.[4]

Petitioner's evidentiary hearing took place on two separate days.  See transcript of May 16, 2008 evidentiary hearing, Exh. 25 at 3184-3299; and transcript of July 11, 2998 evidentiary hearing, Exh. 25 at 3300-3326.  Trial counsel, Mr. Harris, testified at the May 16, 2008 hearing.  Id. at 3218-3256.  Trial counsel, Mr. McCloughlin, testified at the July 11, 2008 hearing.  Id. at 3303-

Here, the postconviction court found that Petitioner failed to demonstrate either of Strickland's prongs.  The Court finds that the State courts' factual determinations were not unreasonable determinations based on the evidence presented.  Additionally, the State courts' decisions were not contrary to or an unreasonable application of clearly established federal law.  As noted above, counsel's actions are deemed reasonable.  Here, the presumption that trial counsel's performance was reasonable under the

---

[4]Respondent, after addressing the claim, also argues that the "issue is procedurally barred."  Response at 34.  The Court disagrees.

circumstances is even stronger because the record reflects that counsel were experienced criminal defense attorneys.[5]  The record of the evidentiary hearing reflect that counsel decided against calling Lieutenant Walker to the stand because Petitioner never claimed that he and the victim had a confrontation in the guest bedroom, and Walker's testimony would have contradicted Mr. Plasencia's testimony and would have hurt the defense.  Here, both counsel made a strategic decision not to call Lieutenant Walker because they believed that Walker's testimony would have been more damaging to Petitioner's case.  Petitioner does not overcome the presumption that counsels' challenged action "might be considered sound trial strategy" by showing that "no competent counsel would have taken the action that his counsel did take."  Sullivan v. DeLoach, 459 F.3d 1097, 1108-09 (11th Cir. 2006).  Consequently, the Court will deny Ground Three as without merit.

---

[5] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."  Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001).  At the May 16, 2008 evidentiary hearing, Mr. Harris testified that he had been an criminal attorney for 12 years. Exh. 25 at 3218.  Mr. McCloughlin testified that he has been practicing since 1989, and as a defense attorney in Fort Myers since October 21, 1997.  Id. at 3303.  He and Mr. Harris "did somewhere between 50 and 60 trials" and would "co-lead each case."  Id. at 3305.  See Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999)(noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

**Ground Four**

In his final ground for relief, Petitioner asserts an ineffective assistance of counsel claim stemming from counsel's failure to object to the departure sentence.  Petition at 14.  The Court cannot discern whether Respondent contends that Petitioner failed to exhaust Ground Four.  See generally Response.  Indeed, Respondent's Response does not address Ground Four and instead submits that this Ground "is a replica of the issues presented in Ground Two" and relies "on the same argument" advanced in Ground Two.  Id. at 36.  As noted supra, Respondent argued that Ground Two was procedurally barred.  Upon review of the record, the Court finds that Petitioner did exhaust Ground Four because he raise the same issue as ground 8 in his Rule 3.850 motion.  Exh.  The postconviction court, after citing to the Strickland standard, Exh. 25 at 1630-31, found in pertinent part:

> In ground 8, Defendant alleges that counsel was ineffective for "failing to argue Apprendi v. New Jersey at sentencing."  He claims the maximum sentence he could have received under the "guidelines" was 260 months.  However, pursuant to Fla. Stat. § 920.0016, the trial court imposed an upward departure sentence of 30 years.  Defendant argues that the upward departure violated Apprendi, which held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.C t. 2348, 147 L. Ed. 2d 435 (2000).
>
> For purposes of determining a constitutional violation under Apprendi, the relevant statutory maximum is found in Fla. Stat. § 775.082.  See Arrowood v. State, 843 So. 2d 940 (Fla. 1st DCA 2003).  Pursuant to § 775.082, the maximum possible sentence for a first-degree felony is 30

years incarceration.  The record reflects that Defendant was convicted of second-degree murder, a first-degree felony, and sentenced to 30 years incarceration.  See attached copy of Judgment and Sentence form.  Therefore, although Defendant's sentence was an upward departure from the recommended sentencing guidelines, it did not violate Apprendi because it was within the prescribed statutory maximum.  Because counsel cannot be deemed ineffective for failing to raise a meritless claim, ground 8 is denied.

Id. at 1638.  The postconviction court's order was *per curiam* affirmed on appeal. Exh. 29.

Petitioner has not demonstrated that the state court's denial of this claim is contrary to, or an unreasonable application of, federal law.  As noted in Ground Two above, the trial court did not impose a sentence that departed from the guidelines because Petitioner's conviction for second degree murder was subject to a maximum term of life in prison.  Here, the trial court sentenced Petitioner to a thirty-year term of imprisonment.  The Florida courts have explicitly rejected the argument advanced by Petitioner. See Robinson v. State, 37 So.3d 921, 922 (Fla. 2d DCA 2010)(in considering the sentence for a conviction for second degree murder committed after July 1, 1995, and holding that "the trial court could have sentenced [the defendant] to 'a term of imprisonment for life or by imprisonment for a term of years not exceeding life imprisonment.'  Thus[,] [the defendant's] sentence of thirty years' [sic] prison followed by probation for life does not violate the applicable sentencing statute and is therefore a legal sentence.").  Consequently, trial counsel had no basis to object to Petitioner's sentence.  Accordingly, Petitioner has not

established either deficient performance or prejudice, and Ground Four is denied pursuant to Section 2254(d).

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1.   The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** for the reasons set forth above.

2.   The **Clerk of Court** shall terminate any pending motions, enter judgment accordingly, and close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability (COA).  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1); <u>Harbison v. Bell</u>, 556 U.S. 180, 183 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003)(citations and internal quotation marks omitted). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___10th___ day of June, 2013.


JOHN E. STEELE
United States District Judge


SA: hmk
Copies: All Parties of Record